## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ASSOCIATION OF COMMUNITY
ORGANIZATIONS FOR REFORM
NOW, INC.,

       Plaintiff,

vs.                                    No. CIV. 97-1396 LH/RLP

NEW MEXICO MOUNTAIN
PROPERTIES, LIMITED LIABILITY
COMPANY
       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for More Definite Statement and to Dismiss for Want of Standing (Docket No. 3), filed January 20, 1998. This Court, having considered the pleadings submitted by the parties, the arguments of counsel, and otherwise being fully advised, finds that Defendant's Motion for More Definite Statement should be **granted.**

## BACKGROUND

Plaintiff Association of Community Organizations for Reform Now, Inc. ("ACORN") alleges that Defendant published and distributed advertisements that "indicate a racial preference" in violation of the Fair Housing Act, 42 U.S.C. § 3604(c) (Pls.' Mem. Opp. Def.'s Mot. at p. 2). Section 3604(c) of the Fair Housing Act makes it unlawful:

1

> [t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c). ACORN has alleged two separate and distinct grounds for its standing to bring this case. First, ACORN alleges an "impairment to its role of facilitating open housing due to Defendant's advertising indicating a preference based on race and/or color or national origin." Second, ACORN alleges an injury to its members based on "their exposure to Defendant's advertising indicating a preference based on race and/or color or national origin." (Pls.' Mem. Opp. Def.'s Mot. at p. 2).

Defendant New Mexico Mountain Properties moves pursuant to Rule 12(e) for a more definite statement of the plaintiff's allegations of standing and, in the event a more definite statement cannot be made, to dismiss for want of standing. Defendant argues that ACORN fails to set out allegations of facts of "distinct and palpable injury" which is the constitutional minimum for standing in federal court. (Def.'s Brief in Support of Mot. at p. 1)

## ANALYSIS

Defendant asks this Court to order ACORN to make a more definite statement of its allegations of standing. In the event a more definite statement cannot be made, Defendant asks the Court to dismiss the complaint for want of standing.

Article III of the Constitution limits the judicial power of federal courts to the resolution of "cases" and "controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). The constitutional limits on

standing eliminate claims in which the plaintiff has failed to make out a case or controversy between himself and the defendant. One of the requirements of a case or controversy is that the plaintiff have "standing" to challenge the action sought to be adjudicated in the lawsuit. *Id*. In order to satisfy Article III, the plaintiff must show that he has personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72 (1978). A litigant normally must assert an injury that is peculiar to himself or to a distinct group of which he is a part, rather than one "shared in substantially equal measure by all or a large class of citizens." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Congress may, by legislation, expand standing to the full extent permitted by Article III, thus permitting litigation by one "who otherwise would be barred by prudential standing rules." *Warth v. Seldin*, 422 U.S. at 501. Standing under the Fair Housing Act is as broad as permitted by Article III of the Constitution. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972).

The inquiry with respect to the standing issues raised in this case is guided by the Supreme Court in *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979). In that case, the Supreme Court considered whether six individuals and the Village of Bellwood had standing to sue under the Fair Housing Act , 42 U.S.C. § 3612, to redress injuries allegedly caused by the racial steering practices of two real estate brokerage firms. The Court concluded that the Village and four of the individual plaintiffs did have standing to sue under the Fair Housing Act. *Id.* at 111. In reaching that conclusion, the Court held that "Congress intended standing under § 812 to extend to the full limits of Art. III" and that the courts accordingly lack the authority to create

prudential barriers to standing in suits brought under that section. *Id.* at 103, n. 9. Thus, the sole requirement for standing to sue under the Fair Housing Act is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered a "distinct and palpable injury in fact." *Havens Realty Corp. v. Coleman,* 455 U.S. at 371 (quoting *Warth v. Seldin* , 422 U.S. at 501). This injury-in-fact element in turn requires plaintiffs to demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Keyes v. School Dist. No. 1, Denver, Colo.*, 119 F.3d 1437, 1445 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). With this understanding, this Court will determine whether the Plaintiff in the present case has the requisite standing.

In determining whether ACORN, as an organization, has alleged a "distinct and palpable injury in fact" sufficient to confer standing, I note that. ACORN "sues in its own right for injuries to its lawful activities to ensure nondiscriminatory housing practices in New Mexico, and for damages based on lost staff time, lost volunteer time, and other costs it has expended on efforts that have been thwarted by Defendant." (Pls.' Compl. ¶ 5).

A similar situation arose in *Havens v. Coleman*, 455 U.S. 363 (1982).  In *Havens,* the Court examined whether an organization, Housing Opportunities Made Equal ("HOME"), had standing in its own right under the Fair Housing Act's private enforcement provision. HOME was a nonprofit corporation with the purpose of making "equal opportunity housing a reality in the Richmond Metropolitan Area." *Id.* at 368. The Supreme Court stated that to determine whether HOME had standing in its own right under the Fair Housing Act, the Court would "conduct the same inquiry as in the case of an individual" and would determine whether plaintiff "alleged such a

4

personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction." *Id.* at 378. After examining the facts as alleged in the complaint, the Court stated that if, as alleged, the defendant's steering practices impaired HOME's ability to provide counseling and referral services for low-income homeseekers, "there can be no question that the organization has suffered injury in fact." *Id.* at 379. Based on this alleged injury to HOME's activities and resources, the Court concluded that HOME had standing to sue in its own right under the Fair Housing Act.

If, as alleged, Defendant's advertising perceptibly impaired ACORN'S ability to advance the interests of low and moderate income people within their communities, the organization has suffered injury in fact.  As an organization, ACORN, therefore, has met the constitutional minima for standing.

The second issue in this case is whether the Plaintiff has alleged a "distinct and palpable injury in fact" sufficient to confer standing on behalf of ACORN'S members.  ACORN sues on "behalf of its members by alleging, inter alia, their exposure to Defendant's advertising indicating a preference based on race and/or color or national origin." (Pls.' Mem. Opp. Def.'s Mot. at p. 2) According to Plaintiff's Complaint, ACORN'S members, "Have suffered loss of their civil right to equal housing and the right to freely associate in a non-discriminatory manner, and suffered humiliation, mental anguish, and emotional distress." (Pls.' Compl. ¶ 6)

In *Hunt v. Washington Apple Advertising Com'n*, 432 U.S. 333 (1977), the Supreme Court recognized that an association has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the

relief requested requires the participation of individual members in the lawsuit." *Id.* at 343.

This Court is satisfied that ACORN has established the latter two requirements. Clearly, the interests ACORN seeks to protect are germane to its purpose of advancing "the interests of moderate income people within their communities, including the promotion of fair housing throughout the United States and in particular the State of New Mexico." (Pl.'s Complaint ¶ 4). Further, neither the claim asserted nor the relief requested require the participation of individual members. The instant suit "raises a pure question of law," i.e., whether Defendant indicated a preference based on race. See *International Union , United Auto., Aerospace and Agr. Implement Works of America v. Brock ,* 477 U.S. 274, 287 (1986).

The first requirement for representational standing-- that the organization's members would otherwise have standing to sue in their own right-- poses a more difficult problem. ACORN relies on a Seventh Circuit case to support the proposition that its members would otherwise have standing to sue in their own right. Plaintiff cites *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526-27 (7th Cir. 1990) for the proposition that if the right to be free of misrepresentation as to the availability of housing is invaded, "the holder of the right can sue without running afoul of Article III, even if he incurs no other injury (for example the loss of a home-buying opportunity)(Pls.' Mem. Opp. Def.'s Mot. at p. 9). In addition, Plaintiff cites two cases that held that mere receipt of a discriminatory advertisement prohibited by the Fair Housing Act confers standing. See *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (2d Cir. 1993); *Saunders v. General Services Corp.*, 659 F.Supp. 1042, 1053 (E.D. Va. 1987). However, the Tenth Circuit has rejected the view that "mere receipt of a discriminatory advertisement is a sufficient injury to establish standing. . . ." *Wilson v. Glenwood Intermountain Properties, Inc*, 98

F.3d 590, 595 (10th Cir. 1996). In *Wilson*, the Tenth Circuit reasoned that plaintiffs must allege injury stemming from the receipt of discriminatory advertisement. *Id.* at 595. While stigmatizing injury resulting from discriminatory advertising can be sufficient is some circumstances to support standing, mere exposure to discriminatory housing indicating a preference based on race and/or color or national origin is insufficient to confer standing. *Wilson v. Glenwood Intermountain Properties, Inc.*, 98 F.3d at 595 (citing *Allen v. Wright,* 468 U.S. 737, 766 (1984)).

This Court is unable to determine whether ACORN'S members suffered a more concrete and personal injury than the mere exposure to discriminatory advertising.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for More Definite Statement (Docket No. 3), filed January 20, 1998, is **granted**. ACORN is directed, pursuant to Rule 12 (e), to file a more definite statement of its allegations of standing of its members.

**IT IS SO ORDERED.**

												_____
												**UNITED STATES DISTRICT JUDGE**